IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

V.                                           Case No. 12-CR-1083 WJ

MARIA LETICIA GUTIERREZ DE LOPEZ
and JESUS CABRAL-RAMIREZ,

        Defendants.

### MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART MOTIONS BY DEFENDANT CABRAL-RAMIREZ

THIS MATTER comes before the Court on the following motions: Defendant Jesus Cabral-Ramirez' Motion to Sever Defendants (**Doc. 38**), filed December 6, 2012; Defendant Cabral-Ramirez' Motion in Limine Relating to Expert Testimony of Border Patrol Agent Brian Knoll (**Doc. 41**), filed December 18, 2012; Defendant Cabral-Ramirez' Motion to Dismiss Counts 1 and 2 of the Indictment or, in the Alternative, Admit Exculpatory Statement Under Fed.R.Evid. 807 (**Doc. 46**), filed December 28, 2012; Defendant Cabral-Ramirez' Motion to Preclude the Government from Admitting into Evidence any Statements Made by Eneldo Valenzuela-Carrillo and Edelmira Alcantar-Aviles (**Doc. 47**), filed December 28, 2012; and Defendant Cabral-Ramirez' Motion to Compel Production of Grand Jury Transcripts (**Doc. 48**), filed December 28, 2012.  The Court DENIES in part and GRANTS in part the motions as outlined below.

Defendants have been indicted with conspiring to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  Defendant Cabral-Ramirez has also been charged with two counts of transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and as an aider and abettor.  Defendants have entered pleas of not guilty, and a jury trial is set for April 16, 2013.  Defendant Cabral-Ramirez has submitted the following pre-trial motions.

**I.**     Motion to Sever Defendants

Defendant seeks to sever his trial from that of his co-defendant, Maria Leticia Gutierrez de Lopez, pursuant to the Confrontation Clause of the United States Constitution and *Bruton v. United States*, 391 U.S. 123, 126 (1968) (Doc. 38).  At a joint trial of two or more co-defendants, admission of a non-testifying[1] co-defendant's statement implicating another defendant violates that defendant's right to be confronted by the witnesses against him and to cross-examine adverse witnesses.  *Bruton*, 391 U.S. at 126.  Here, after her arrest, Gutierrez de Lopez gave statements to border patrol agents that implicated herself and Defendant in transporting an alien to Denver.  Defendant argues there is no way to admit those statements at trial without implicating him, and that the jury would be unable to follow any direction to use the statements only against Gutierrez de Lopez.  *See Lee v. Illinois*, 476 U.S. 530, 542 (1986) ("[A] confession that incriminates an accomplice is so 'inevitably suspect' and 'devastating' that the ordinarily sound assumption that a jury will be able to follow faithfully its instructions could not be applied." (quoting *Bruton*, 391 U.S. at 126)).  Therefore, Defendant contends that severance is required to prevent him from suffering significant unfair prejudice.

Granting a severance is within a trial court's discretion.  However, "[s]everance is not granted as a matter of right, but only when the defendant would be prejudiced by a joint trial." *United States v. Espinosa*, 771 F.2d 1382, 1408 (10th Cir. 1985) (quoting *United States v. Long*, 705 F.2d 1259, 1262 (10th Cir.1983)).  Here, the Court finds no prejudice to Defendant.  The Government agrees with Defendant that introducing Gutierrez de Lopez' post-arrest statements to border patrol would violate his Sixth Amendment right to confront witnesses against him, and represents that it does not intend to do so.  Rather, the Government intends to use such

---

[1] Although no party has stated definitively that Gutierrez de Lopez will not testify, the Court will so assume to resolve this motion.

statements only if Gutierrez de Lopez testifies, and only for impeachment purposes if she testifies contrary to the prior statements. Under such a circumstance, Defendant would have the opportunity to cross-examine Gutierrez de Lopez, eliminating the *Bruton* concern and causing no prejudice. If Gutierrez de Lopez does not testify and the Government does not introduce the inculpatory statements, of course, Defendant likewise suffers no prejudice.

Accordingly, Defendant's Motion to Sever (**Doc. 38**) is DENIED.[2]

**II.** Motion in Limine Relating to Expert Testimony of Border Patrol Agent Brian Knoll

Defendant Jesus Cabral-Ramirez moves to exclude expert testimony of border patrol agent Brian Knoll (Doc. 41). Agent Knoll is expected to testify that when an alien transporting organization moves an alien from the Mexican border into the interior United States, the odds of the alien's illegal presence in the United States being detected by immigration authorities decrease. Defendant also seeks to limit Agent Knoll's testimony regarding Defendant's state of mind, specifically that he knew his passengers were illegal aliens seeking his assistance to further their illegal presence. Defendant contends that Agent Knoll is not sufficiently qualified to express expert testimony on either the odds of an illegal alien being detected as he moves into the interior United States, or on the likelihood of an illegal alien becoming employed as he moves into the interior.

    *A.*    *Reliability*

*Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), guides the Court's analysis of whether Agent Knoll's testimony is proper under Fed.R.Evid. 702. In *Daubert*, the Supreme Court found that four factors play a significant role: 1) whether the proposed expert's

---

[2] The Government also represents that it intends to introduce other, non-testimonial statements made by Defendant and Gutierrez de Lopez before their arrests, as statements in furtherance of the alien transporting conspiracy. As the Government correctly notes, such statements, where non-testimonial, are admissible under Fed.R.Evid. 801(d)(2) and 804(b)(3).

methodology has been tested; 2) whether the proposed expert's theory or technique has been subjected to peer review and publication; 3) whether the technique has a known or potential rate of error; and 4) whether the technique has been generally accepted in the proper scientific community. *Id.* at 593-94.

Defendant incorrectly focuses on these factors in arguing that Agent Knoll's testimony does not qualify as proper expert testimony. The *Daubert* factors were not meant to be a "definitive checklist or test" and trial courts must remain flexible under a Federal Rule of Evidence 702 inquiry. *Id.* at 593-94. In *Kumho Tire Co. v. Carmichael*, the United States Supreme Court emphasized that *Daubert* factors are not a definitive checklist or test, and that a court's inquiry into reliability must be tied to the facts of a particular case. 526 U.S. 137, 150 (1999). Also, according to the *Kumho Tire* decision, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. *Id.* at 152.

Agent Knoll's opinion is exactly the kind of testimony that does not fit neatly within the traditional *Daubert* factors, but nevertheless satisfies *Daubert*'s reliability standard. A witness may qualify as an expert by "knowledge, skill, experience, training, or education." *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974); *see also U.S. v. Arnold*, 3 Fed. App'x 614 (9th Cir. 2001) (district court did not abuse discretion in allowing agent's testimony as an expert witness in prosecution for conspiracy to smuggle illegal aliens because agent's testimony regarding modus operandi of alien smuggling assisted the jury in understanding the evidence). In this case, Agent Knoll backs up his testimony with twenty-five years as a law enforcement officer and border agent. He has intercepted and interviewed thousands of illegal aliens and transports moving through the state. These interviews have provided him with feedback and

information which, over the years, renders him capable and competent to offer testimony on the methods used by alien smuggling and harboring organizations, including how they attempt to minimize or escape detection and optimize integration of the aliens who are smuggled into the country. *See U.S. v. Garza*, 566 F.3d 1195, 1199-1200 (10th Cir. 2009) (experience and training are generally the basis upon which experts rely to provide testimony regarding the modus operandi of drug organizations).

In addition to Agent Knoll's testimony being reliable, the Court also finds that his opinion would be helpful to the jury, since in general, most fact finders would not be familiar with the subject matter on which Agent Knoll will testify.

    *B.*    *Intent*

Defendant seeks to exclude testimony based on Defendant's statements that he knew his passengers were illegal aliens seeking his assistance to further their illegal presence. The Government responds that it does not intend to elicit testimony from Agent Knoll about Defendants' mental states, and whether they intentionally or knowingly were conspiring to transport aliens. He may, however, testify about facts which support a conclusion to be made by the fact finder that an alien transporting conspiracy existed. The Court agrees with the Government that this testimony is proper because it is based on Agent Knoll's experience and what he has seen in previous alien transporting cases.

Accordingly, Defendant's Motion in Limine (Doc. 41) is DENIED.

**III.**    **Motion to Dismiss Counts 1 and 2 of the Indictment or, in the Alternative, Admit Exculpatory Statement Under Fed.R.Evid. 807**

Defendant seeks to dismiss Counts 1 and 2 of the Indictment (Doc. 46), on the ground that the Government improperly released a material exculpatory witness, Eneldo Valenzuela-

Carrillo, in violation of his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process. (Doc. 46.)

Valenzuela-Carrillo was a passenger in Defendant's car when it was stopped by New Mexico State Police. An alien, Valenzuela-Carrillo was taken to a United States Custom and Border Patrol office, where he was interviewed by border patrol agents. He told the agents that he "lived in Denver for six years, but recently had to return to Mexico because his grandmother got very sick. After spending a few months in Mexico, Carrillo, wanted to get back to Denver to see his family." (Ex. A., Doc. 46-1 at 1.) Valenzuela-Carrillo was subsequently prosecuted for illegally re-entering the United States after deportation, and was removed from the United States to Mexico. He is consequently unavailable to testify. Defendant argues that this statement is material and exculpatory.

    *A.    Due Process Rights*

The Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood v. Arizona*, 488 U.S. 51, 58 (1988). Although *Youngblood* addressed the physical destruction of potentially exculpatory DNA evidence, the Tenth Circuit has applied this principle to the deportation of an alien material witness in *United States v. Iribe-Perez*, 129 F. 3d 1167, 1173 (10th Cir. 1997). Under *Iribe-Perez*, "the burden is on the appellant to show that: (1) the government acted in bad faith by allowing a witness with potentially exculpatory information to depart; and (2) the voluntary departure of the absent witness prejudiced him by eliminating testimonial evidence that 'would be both material and favorable to the defense.'" *Id.* (quoting *Valenzuela-Bernal*, 458 U.S at 873). The Court finds that here, Defendant has failed to meet this burden.

Addressing the first *Iribe-Perez* prong, Defendant has offered no evidence of bad faith. Other Circuits have offered two standards for bad faith. The Ninth Circuit has required a defendant to show either that (1) the government departed from normal deportation procedures, or (2) it deported the witness to gain an unfair tactical advantage. *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1085 (9th Cir. 2000). The Seventh Circuit has required a defendant to show "official animus" or a "conscious effort to suppress exculpatory evidence." *United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000). The Court need not resolve which of these two standards is more appropriate here, because Defendant has offered no evidence supporting either.

Turning to the second *Iribe-Perez* prong, Defendant has also failed to show how the statement at issue would be both material and favorable to the defense. The offense of illegal transportation of an alien requires that the transportation be "in furtherance of" an alien's violation of the law by coming to, entering, or remaining in the United States. 8 U.S.C. § 1324(a)(1)(A)(ii). That is, the statute "makes it illegal for a person who, knowing or in reckless disregard of the fact that an individual is an illegal alien, transports or moves, or attempts to transport or move, the alien 'in furtherance of' the alien's illegal entry or continued illegal presence in the United States." *United States v. Barajas-Chavez*, 162 F.3d 1285, 1287-88 (10th Cir. 1999). Defendant argues that Valenzuela-Carrillo's statement that he wanted to go to Denver to see his family indicates that he intended only to visit, not to remain. And if Valenzuela-Carrillo intended only to visit and not to remain, Defendant contends, his transportation of Valenzuela-Carrillo did not violate the statute.

Defendant errs in two respects. First, as the Government points out, Valenzuela-Carrillo's intent is not at issue. Rather, the statute addresses the Defendant's intent. Defendant

7

has not offered any evidence to suggest that he even knew why Valenzuela-Carrillo wanted to travel to Denver.  However, the Government will proffer evidence from Border Agent Brian Knoll that moving an illegal alien away from the border furthers the alien's illegal presence in this country because the chance of detection decreases as the alien moves into the interior.  From this, a reasonable jury could conclude that Defendant intended to further Valenzuela-Carrillo's illegal presence in this country, regardless of Valenzuela-Carrillo's intent.

Second, the statute forbids transportation in furtherance of the alien's "illegal entry or continued illegal presence in the United States."  Valenzuela-Carrillo's presence in the United States was illegal because he had illegally re-entered after deportation.  Under these conditions, any presence in the United States, whether intended to be temporary or permanent, was illegal.  Even if Defendant believed that Valenzuela-Carrillo only intended to visit Denver and then return to Mexico, transporting him to Denver furthered his illegal presence in the country.  Therefore, the statement at issue is neither material nor favorable to Defendant.

    *B.*        Compulsory Process Rights

According to the Supreme Court, the Sixth Amendment guarantees a defendant compulsory process for obtaining favorable witnesses; however, it does not grant a defendant the right to secure the attendance and testimony of any and all witnesses.  *See Washington v. Texas*, 388 U.S. 14 (1967).  The Supreme Court addressed the compulsory process implications of deporting a material witness in *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982).  There, the Court articulated three propositions.  First, a defendant "cannot establish a violation of his constitutional right to compulsory process merely by showing that deportation of the [potential witnesses] deprived him of their testimony. He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense." *Id.* at 867.

Second, that the defendant has not had an opportunity to interview the witness at issue "may well support a relaxation of the specificity required in showing materiality," but does not "afford[] the basis for wholly dispensing with such a showing." *Id.* at 870. Finally, sanctions for the deportation of a material alien witness are warranted "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id.* at 874.

For the reasons stated above, this Court has found that, Venezuela-Carrillo's statement is not material or favorable to Defendant. Nor is there any reasonable likelihood that the statement could affect the judgment of the trier of fact. Therefore, Venezuela-Carrillo's deportation does not violate Defendant's compulsory process rights.

    *C.*    Admission of Valenzuela-Carrillo's Statement Under Fed.R.Evid. 807

Finally, Defendant asks this Court to admit Valenzuela-Carrillo's statement under the residual exception to hearsay. Fed.R.Evid. 807. Hearsay statements sought to be admitted under Rule 807 must (1) be evidence of a material fact; (2) be more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts; and (3) serve the general purposes of the Rules of Evidence and the interests of justice by its admission into evidence. However, the Court has already found that Valenzuela-Carrillo's statement is not material. Therefore, it may not be admitted under Rule 807.[3]

Accordingly, Defendant's Motion to Dismiss Count 1 and Count 2 of the Indictment (Doc. 46) is DENIED.

**IV.**    Motion to Preclude the Government from Admitting into Evidence any Statements Made by Eneldo Valenzuela-Carrillo and Edelmira Alcantar-Aviles

---

[3] To admit the statement would also run counter to Defendant's Motion to Preclude the Government from Admitting into Evidence any Statements Made by Eneldo Valenzuela-Carrillo and Edelmira Alcantar-Aviles, discussed in Section IV below, in which the Defendant asks this Court to exclude all statements by Valenzuela-Carrillo, and which the Government does not contest.

Defendant asks the Court to prevent the Government from introducing into evidence any statements made by Eneldo Valenzuela-Carrillo and Edelmira Alcantar-Aviles, the illegal aliens allegedly transported in Defendant's car.  These individuals are unavailable to testify at trial and Defendant argues that to introduce their testimonial, post-arrest statements would violate his Confrontation Clause rights.  The Government agrees with Defendant's argument, states that it will not introduce the aliens' post-arrest statements at trial, and asks the Court to grant Defendant's motion.

Therefore, Defendant's motion is GRANTED.

**V.** Motion to Compel Production of Grand Jury Transcripts

Defendant seeks production of grand jury transcripts for Government witnesses who testified before the grand jury in this case, and who will testify at trial.  The Government has represented that it will produce the transcripts one week before the start of trial.  Therefore, the Court DENIES Defendant's Motion to Compel Production as moot.  Should Defendant encounter any difficulty acquiring the pertinent transcripts, this Court will revisit the matter.

## CONCLUSION

For the foregoing reasons, the Court hereby

**DENIES** Defendant's Motion to Sever Defendants (**Doc. 38**);

**DENIES** Defendant's Motion in Limine Relating to Expert Testimony of Border Patrol Agent Brian Knoll (**Doc. 41**);

**DENIES** Defendant's Motion to Dismiss Counts 1 and 2 of the Indictment or, in the Alternative, Admit Exculpatory Statement Under Fed.R.Evid. 807 (**Doc. 46**);

**GRANTS** Defendant's Motion to Preclude the Government from Admitting into Evidence Any Statements Made by Eneldo Valenzuela-Carrillo and Edelmira Alcantar-Aviles (**Doc. 47**); and

**DENIES** as moot Defendant's Motion to Compel Production of Grand Jury Transcripts (**Doc. 48**).

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE